UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO: 3.10CV1100(JBA) |
| EX. REL. MICHAEL M. GREENWALD DDS | : | |
| V. | : | |
| | : | |
| KOOL SMILES DENTISTRY, PC | : | |
| KOOL SMILES DENTISTRY-2, PC | : | November 23, 2015 |
| | : | |
| | : | [FILED UNDER SEAL] |

## AMENDED COMPLAINT

### INTRODUCTION

1.  This is an action to recover damages and civil penalties on behalf of the United States of America arising from false claims and false statements made by the Defendants in violation of the Federal False Claims Act, 31 U.S.C. §3729 through §3733 ("FCA").  As alleged in this complaint, the defendants have violated the FCA by improperly billing and retaining payments from the Medicaid Program by knowingly and intentionally engaging in a premeditated design and scheme to provide medically unnecessary treatments to vulnerable, poor and helpless children insured by the Medicaid Program.

### JURISDICTION AND THE PARTIES

2.      The plaintiff, Michael M. Greenwald, D.D.S. ("Dr. Greenwald"), the Relator

resides at 50 Quanopaug Trail, Woodbury, CT 06798 and is a fully educated, trained and licensed doctor of dental surgery.

3.      The defendants, Kool Smiles Dentistry, PC and Kool Smiles Dentistry-2 PC, are legal entities licensed and operating in the State of Connecticut (hereinafter referred to collectively as "Kool Smiles") .

4.      Upon information and belief, the defendants operate several dental clinics in Connecticut at locations in Waterbury, CT, New Haven, CT, New Britain, CT and Bridgeport, CT.

5.      Kool Smiles in Connecticut is affiliated with and/or controlled by a larger nationwide entity which provides dental services targeted to children receiving Medicaid benefits and which goes by the trade name 'Kool Smiles'.

6.      As required under the False Clams Act, 31 U.S.C. §3730(a)(2), the Relator has provided the United States Government with a statement of all material evidence and information related to the complaint.  This disclosure statement supports the claim that Kool Smiles presented claims for worthless and medically unnecessary items and services

2

to Medicaid for payment and that the United States government relied on these invoices in making payments to Kool Smiles.

7.      The State of Connecticut is authorized to pursue recovery of false claims by Conn. Gen. Stat. §§ 17b- 301b(a)(1)-(2).  The State of Connecticut, as authorized by the statute, is a real party in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the State of Connecticut by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

8.      The State of Virginia is authorized to pursue recovery of false claims by Va. Code §§ 8.01-216.3a(1)-(2).  The State of Virginia, as authorized by statute, is a real party in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the State of Virginia by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

9.      The District of Columbia is authorized to pursue recovery of false claims by D.C. Code Ann. §§ 2-308.14(a)(1)- (2).   The District, as authorized by statute, is  a real

party in interest in this matter.   On information and belief Relator's First Amended Complaint was supplied to the District of Columbia by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

10.     The State of Georgia is authorized to pursue recovery of false claims by Ga. Code Ann. §§ 49-4-168.1(a)(1)-(2).  The State of Georgia, as authorized by statute, is a real party in interest in this matter.   On information and belief Relator's First Amended Complaint was supplied to the State of Georgia by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

11.     The State of New Mexico is authorized to pursue recovery of false claims by two statutes: N.M. Stat. Ann. §§ 27-14-4(A) & (C), and N.M. Stat. Ann. §§ 44-9-3a(1)-(2). The State of New Mexico as authorized by statute, is a real party in interest in this matter. On information and belief Relator's First Amended Complaint was supplied to the State of

New Mexico by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

12.    The State of Louisiana is authorized to pursue recovery of false claims by La. Rev. Stat. §§ 46:438.3(A)-(B).  The State of Louisiana, as authorized by statute, is a real party in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the State of Louisiana by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

13.    The State of Indiana is authorized to pursue false claims by Ind. Code § 5-11-5.5-2(b)(8).  The State of Indiana, as authorized by statute, is a real party in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the State of Indiana by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

14.    The State of Texas is authorized to pursue false claims by Tex. Hum. Res. Code §§ 36.002(1) & (4)(B).  The State of Texas, as authorized by statute, is a real party

in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the State of Texas by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

15.     The State of Oklahoma is authorized to pursue false claims by Okla. Stat. Tit. 63, §§ 5053.1B(1)-(2).  The State of Oklahoma, as authorized by statute, is a real party in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the State of Oklahoma by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

16.     The Commonwealth of Massachusetts is authorized to pursue false claims by Mass. Ann. Laws. Ch. 12, §§ 5B(1)-(2).  The Commonwealth, as authorized by statute, is a real party in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the Commonwealth of Massachusetts by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

17.     The State of Maryland is authorized to pursue false claims by Md. Code Ann., Health-General §§ 2-602(a)(1)-(2).  The State of Maryland, as authorized by statute, is a real party in interest in this matter.  On information and belief Relator's First Amended Complaint was supplied to the State of Maryland by the Department of Justice, and has been involved in the litigation of this case prior to being served with a copy of this complaint.

18.     This court has jurisdiction over this matter pursuant to: 31 U.S.C. §3730(b) in that the claims for relief in this action are brought in the name of the United States government, and pursuant to 31 U.S.C. §3732(a).

19.     Venue is proper pursuant to 31 U.S.C. §3732(a)  in that defendants are incorporated and operate in this district.

## FACTS

20.     Congress enacted the Medicaid Program pursuant to 42 U.S.C. §1396a et. seq., as a joint federal state funding of medical care to provide a comprehensive range of medical services to those individuals who cannot afford to pay their own medical costs.

7

21.     At the federal level, Congress has entrusted the Secretary of Health and Human Services ("Secretary") with administering Medicaid, and the Secretary, in turn, exercises that delegated authority through the CMS.

22.     In Connecticut, the State Department of Social Services ("DSS") administers the Medicaid Program.

23.     The States of Connecticut, Georgia, Indiana, Louisiana, Maryland, Massachusetts, New Mexico, Oklahoma, Virginia, Texas and the District of Columbia have individually enacted False Claims Acts modeled after the FCA that contain provisions similar to those quoted above. Relators assert claims under the State FCAs to recover for the Plaintiff States the amounts they provided Defendants in payment of the false claims presented to the States' Medicaid, CHIP, and other healthcare programs alleged herein.

24.     Providers of service to Medicaid recipients are reimbursed at fixed rate schedules determined by law as set forth in statutes, regulations and general instructions issued by CMS and found in Manuals.

25.     Medicaid only provides payment for items and services which are reasonable and necessary for the diagnosis and treatment of illness and injury.  See 42 U.S.C. §1395i(a)(1)(A) and §1395y(a)(1)(A); 42 C.F.R. Parts 405 441; Regs. Conn. State Agencies §17-102-01 to 17b-102-04; C.G.S. §53A-290.

26.     Participating providers are required to ensure that any services rendered to Medicaid recipients are supported by sufficient evidence of medical necessity.  See 42 U.S.C. §1320c-5(a)(1).

27.     When submitting claims for reimbursement to the Medicaid Programs, the provider is required to Certify Medical Necessity and Program Compliance which certifies: (1) that the services and procedures claimed were medically necessary; (2) that the services claimed were actually provided by the provider making the claim; and (3) that the services and procedures claimed were adequately documented in the patient's medical treatment records.

28.     On or about June 27, 2009, the Relator, Dr. Greenwald, and KOOL SMILES entered into an employment agreement ("Agreement") whereby the relator as an

employee, would render professional medical services as a dentist to children in Connecticut.  The children to whom Dr. Greenwald was to provide medical services under the Agreement included persons eligible for reimbursement under Medicaid.  Under the Agreement, Dr. Greenwald was paid a base salary of $550.00 per diem and offered lucrative financial incentives to perform additional dental procedures which often were not medically necessary or advisable for the treatment of the children.

29.     After commencing his employment with the defendants pursuant to the Agreement, Dr. Greenwald learned that the Kool Smiles' compensation system for its licensed medical professionals, dentists and hygienists, was structured so that its dentists and hygienists would be encouraged to perform additional dental procedures which were not medically necessary, advisable or in keeping with ethical and standard medical procedures and the purpose of employing such procedures were solely to increase Medicaid payments to Kool Smiles.

30.     Kool Smiles risked patient safety and failed to provide the appropriate and necessary level of care required when billing Medicaid .  The medically unnecessary and

worthless services and illegal billing procedures provided to patients during a period covering a period from September, 2007 through and including February, 2010, in Connecticut and at other locations throughout the United States included:

a) **On patient JMH**[1]:

Tooth K  -Pulpotomy and stainless steel crown performed. Radiographs reveal minor to no decay, if decay is present, extent of necessary treatment would only be a simple restoration, as decay does not progress radiographically to the nerve chamber.

Tooth L  -Pulpotomy and stainless steel crown performed. Radiographs reveal minor to no decay, if decay is present, extent of necessary treatment would only be a simple restoration, as decay does not progress radiographically to the nerve chamber.

---

[1] Relator has provide initials to identify patients in order to protect patients' privacy rights.

Tooth T  -Pulpotomy ands steel crown performed. Radiographs reveal minor to no decay, if decay is present, extent of necessary treatment would only be a simple restoration, as decay does not progress radiographically to the nerve chamber.

b) **On patient  G N-G**

Tooth A – treatment planned for stainless steel crown. Conservative restoration indicated as only necessary treatment.

Tooth J  - treatment planned for stainless steel crown. Conservative restoration indicated as only necessary treatment.

(c) **On patient R S**

Tooth K- treatment planned for stainless steel crown, yet conservative restoration indicated as the only necessary medical treatment.

Tooth L- treatment planned for stainless steel crown, yet conservative restoration indicated as the only necessary medical treatment.

Tooth S - treatment planned for stainless steel crown, yet conservative restoration indicated as the only necessary medical treatment.

(d)  **On patient M F**

Tooth E – Treatment planned and performed pulpotomies and crowns where potentially more conservative treatment would be indicated as the only necessary treatment, which would include composite restoration rather than more aggressive crown placement, and questionable indication for a pulpotomy present.

Tooth F - Treatment planned and performed pulpotomies and crowns where potentially more conservative treatment would be indicated, as the only necessary treatment, which would include composite restoration rather than more aggressive crown placement, and questionable indication for a pulpotomy present.

(e)  **On patient J O**

Tooth E – full crown placement performed rather than more conservative and strongly indicated composite filling as the medically necessary treatment.

Tooth F – full crown placement performed rather than more conservative and strongly indicated composite filling as the medically necessary treatment.

Tooth G – full crown placement performed rather than more conservative and

13

strongly indicated composite filling as the medically necessary treatment.

(f)  **On patient R L H**

Tooth J –Stainless steel crown placed rather than more conservative restoration which would be the medically necessary treatment.

Tooth K – Stainless steel crown placed rather than more conservative restoration as the medically necessary treatment. Pulpotomy  performed, questionable treatment rather than a base for thermal insulation.

Tooth L – Stainless steel crown placed rather than more conservative restoration as the medically necessary treatment. Caries noted only on distal of tooth radiographically.

(g)  **On patient A H**

Tooth A – Treatment planned for stainless steel crown – yet no radiographic caries noted

Tooth R- Treatment planned for pulpotomy and stainless steel crown, questionable indication for pulpotomy as medically necessary treatment.

14

Tooth S – Treatment planned for pulpotomy and stainless steel crown, both rather questionable treatment indications and that 'plan' was for treatment which was worthless and medically unnecessary.

Tooth T – Treatment planned for stainless steel crown, yet no radiographic caries noted.

(h)  **On patient O G**

Tooth K – pulpotomy and stainless steel crown provided, yet no radiographic signs of decay.

Tooth L – pulpotomy and stainless steel crown provided, caries noted but questionable indication for need of such extensive treatment for pulpotomy, poor indication for stainless steel Crown.

Tooth T – pulpotomy and stainless steel crown provided, no radiographic signs of decay.

(i)  **On patient C O**

Tooth B – Stainless steel crown provided, more conservative restoration indicated

15

as medically necessary treatment.

Tooth L – treatment planned for crown where more conservative treatment would be indicated as medically necessary.

Tooth F - treatment planned for crown where more conservative treatment would be indicated as medically necessary.

(j) **On patient J L**

only 2 periapical films of front teeth taken, yet:

Tooth A – Stainless steel crown placed *without* documentation of radiograph

Tooth T - Stainless steel crown placed *without* documentation of radiograph

Tooth C – *No radiograph*, yet pulpotomy and stainless steel crown placed.

Tooth D – treatment planned for pulpotomy and crown – questionable radiographic supporting evidence present to justify treatment.

Tooth E - treatment planned for pulpotomy and crown – questionable radiographic supporting evidence present to justify treatment.

Tooth F - treatment planned for pulpotomy and crown – questionable radiographic

evidence present to justify treatment plan.

Tooth G - treatment planned for pulpotomy and crown – questionable radiographic evidence present to justify treatment plan.

**(k)  On patient O D**

Tooth I – Stainless steel crown placed, no gross caries noted radiographically

Tooth J- Stainless steel crown placed, no gross caries noted radiographically

Tooth L – pulpotomy and stainless steel crown, not supported by radiograph. No caries noted proceeding to pulp chamber.

Tooth A – treatment planned for stainless steel crown, no radiographic support.

Tooth B -  treatment planned for stainless steel crown, no radiographic support, minor caries on film.

Tooth S -  treatment planned for stainless steel crown, no radiographic support, minor caries noted on film.

Tooth T -  treatment planned for stainless steel crown, no radiographic support, minor caries noted on film.

17

(l)  **On patient A R**

Tooth E – Crown placed, radiographic evidence supports simple restoration as the medically necessary treatment.

Tooth F – Pulpotomy and crown placed, radiographic evidence supports simple restoration without pulpotomy as the medically necessary treatment.

Tooth G - Pulpotomy and crown placed, radiographic evidence supports simple restoration without pulpotomy as the medically necessary treatment.

Tooth J – Treatment planned for a stainless steel crown, but radiographic evidence supports simple restoration as the medically necessary treatment.

(m)  **On patient S G**

Tooth A – Stainless steel crown and pulpotomy, no convincing radiographic evidence supporting either procedure as medically necessary.

Tooth J – Stainless steel crown planned and pulpotomy planned, no radiographic evidence supporting either procedure as medically necessary.

Tooth S - Stainless steel crown and pulpotomy, no convincing radiographic

evidence supporting either procedure as medically necessary.   Rather, more conservative restoration indicated.

(n) **On patient J R**

Tooth A – treatment planned for stainless steel crown, no radiographic evidence noted to support the procedure as medically necessary.

Tooth S – Treatment planned for stainless steel crown and pulpotomy, no radiographic evidence noted to support either procedure as medically necessary..

(o) **On patient  D G**

Tooth K – stainless steel crown and direct pulp cap. No radiographic evidence present to support either procedure as medically necessary.

Tooth T - stainless steel crown and direct pulp cap. No radiographic evidence present to support either procedure as medically necessary.

Tooth L – pulp cap and stainless steel crown – possible conservative restoration indicated.

Tooth S - pulp cap and stainless steel crown – conservative restoration indicated

as medically necessary treatment.

(p) **On patient A S**

Tooth B – Stainless steel crown placed. No radiographic evidence present to support the procedure as medically necessary.

Tooth I – Stainless steel crown placed. No radiographic evidence present to support the procedure as medically necessary.

Tooth J – Stainless steel crown placed. No radiographic evidence present to support the procedure as medically necessary.

Tooth K – Stainless steel crown placed. No radiographic evidence present to support the procedure as medically necessary.

(q) **On patient J L**

*note: no posterior xrays taken o support treatment.*

Tooth A – Stainless steel crown.  No xrays to support treatment as medically necessary.

Tooth T –Stainless steel crown. No xrays to support treament as medically

20

necessary.

Tooth C – Stainless steel crown. No xrays to support treatment as medically necessary.

Tooth C – Pulpotomy performed. No xrays to support treatment as medically necessary.

Tooth D – Stainless steel crown,  No radiographic evidence present to support the procedure as medically necessary.  A more conservative restoration would have been the medically necessary and appropriate treatment.

Tooth E - Stainless Steel crown.  No radiographic evidence present to support the procedure as medically necessary.  A more conservative restoration would have been the medically necessary and appropriate treatment.

Tooth F - Stainless steel crown.  No radiographic evidence present to support the procedure as medically necessary.  A more conservative restoration would have been the medically necessary and appropriate treatment.

Tooth G- Stainless steel crown.  No radiographic evidence present to support the

21

procedure as medically necessary.  A more conservative restoration would have been the medically necessary and appropriate treatment.

Tooth E – Pulpotomy performed.  No radiographic evidence present to support the procedure as medically necessary.  A more conservative restoration would have been the medically necessary and appropriate treatment.

(r)  **On patient A G**

Tooth K – Treatment planned for stainless steel crown.  No compelling radiographic evidence present to support the procedure as medically necessary. Caries is not grossly invasive on film so as to justify a stainless steel crown as medically necessary.

Tooth L - Treatment planned for stainless steel crown. No compelling radiographic evidence present to support the procedure as medically necessary. Caries is not grossly invasive on film so as to justify a stainless steel crown as medically necessary.

Tooth S - Treatment planned for stainless steel crown.  No compelling radiographic

22

evidence present to support the procedure as medically necessary. Caries is not grossly invasive on film so as to require a stainless steel crown as medically necessary.

Tooth T - Treatment planned for stainless steel crown. No compelling radiographic evidence present to support the procedure as medically necessary. Caries is not grossly invasive on film so as to require a stainless steel crown as medically necessary.

(s)  **On patient A T**

Tooth K – Stainless steel crown, no preoperative radiograph.  Chief complaint was pain upper anterior on this visit!    Procedure not medically necessary or appropriate.

Tooth L – Stainless steel crown performed. No preoperative radiograph taken. Procedure not established or documented as medically necessary or appropriate.

(t)  **On patient S**

Tooth T – no strong radiographic evidence of caries to pulp supporting pulpotomy

as well as stainless steel crown placement versus conservative restoration as the medically necessary or appropriate treatment.

(u) **On patient D M**

Tooth S –Stainless steel crown placed. Small caries noted on radiograph, no strong supporting evidence for stainless steel crown as medically necessary and appropriate treatment.

Tooth T – Pulpotomy and stainless steel crown placed, pathologic exposure due to caries not supported by radiographs.

Tooth B – treatment planned for stainless steel crown and pulpotomy, not supported by radiographs as medically necessary.

Tooth I – pulpotomy and stainless steel crown treatment planned. More conservative treatment indicated as medically necessary.

Tooth J - pulpotomy and stainless steel crown treatment planned. More conservative treatment indicated as medically necessary.

(v) **On patient A A**

Tooth K – Treatment planned for stainless steel crown. No caries noted by second doctor, stainless steel crown not radiographically supported as medically necessary

24

procedure.

Tooth S - Treatment planned for stainless steel crown. No caries noted by second doctor, stainless steel crown not radiographically supported as medically necessary procedure.

Tooth T - Treatment planned for stainless steel crown. No caries noted by second doctor, stainless steel crown not radiographically supported as medically necessary procedure.

(w) **On patient D W**

Tooth T- Stainless steel crown placed, no radiographic evidence supporting procedure as medically necessary treatment.

Tooth S – treatment planned for stainless steel crown, no radiographic evidence supporting procedure as medically necessary treatment.

Tooth I – Stainless steel crown placed, no radiographic evidence supporting procedure as medically necessary treatment.

Tooth J – Stainless steel crown placed, no radiographic evidence supporting procedure as medically necessary treatment.

Tooth K – Pulpotomy and stainless steel crown placed, no radiographic evidence

supporting procedures as medically necessary treatment.

(x)     Many small children patients were placed in papooses (restraints) against good medical practice and without the informed consent of their parents so that Kool Smiles could perform numerous medically unnecessary and worthless procedures.

31.     Relator, Dr. Greenwald, believes that all of the above referenced patient histories and treatment records were for children on the Medicaid Program and that Kool Smiles generated invoices for said treatments which were submitted to and paid by Medicaid.

32.     When Kool Smiles submitted claims to Medicaid for payment for said services, Kool Smiles falsely certified that said services were medically necessary and provided in accordance with the standard of care.

33.     Kool Smiles were aware when it presented and caused to be presented claims for said services that they were seeking payment for worthless and medically unnecessary items and services in violation of 42 U.S.C. §1320a-7a(a).  See. 18 U.S.C. §1035.

34.     Kool Smiles were aware that they were improperly submitting claims for

26

worthless and medically unnecessary items and services to obtain payment for said worthless and medically unnecessary items and services. Despite this knowledge, Kool Smiles failed to take any corrective action or institute procedures to prevent such improper acts and ensure that the said treatments were only billed for services which were medically necessary.

35.     Kool Smiles were aware of that fact that they had submitted claims for payment for worthless and unnecessary medical services and concealed and covered up the fact that the worthless and unnecessary services had no diagnostic or therapeutic use for Medicaid beneficiaries in violation of 42 U.S.C. §1320a-7a(a). See. 18 U.S.C. §1035.

36.     Relator, Dr. Greenwald, charges that in performing these acts, Kool Smiles through the acts of their agents, knowingly made, used or caused to be made or used false records or statements to get false or fraudulent claims paid or approved by the United States Government and the DSS to the damage of the Treasury of the United States and the State of Connecticut in violation of 31 U.S.C. §3729-3731; 31 U.S.C. §380; C.G.S. §53a-290.

37.     By all of the above, Kool Smiles have risked patient safety and failed to provide the minimum level of care required for billing Medicaid.

38.     The policies and practices implemented by Kool Smiles, upon reliable information and belief continuing up to the present, have encouraged and facilitated the rendering of substandard and inadequate dental services to Medicaid beneficiaries and intentionally caused Medicaid to be billed and pay for medically unnecessary and worthless treatment.

39.     All of the above billings for dental services resulted in improper payments from Medicaid for patient services.

### FIRST CAUSE OF ACTION (VIOLATION OF 31 U.S.C §3729(a)(1)

40.     On information and belief, Kool Smiles presented or caused to be filed with the United States government the States of Connecticut, Georgia, Indiana, Louisiana, Maryland, Massachusetts, New Mexico, Oklahoma, Virginia, Texas and the District of Columbia claims with knowledge of their falsity or with grossly negligent or reckless disregard to facts and conditions that would indicate that the claims were inaccurate or inappropriate and false and caused payments for the claims to me made by the United States government.

41.     On information and belief, Kool Smiles have and continue to knowingly or with reckless disregard for facts, misrepresent through false certifications and improper

28

use of Medicaid reimbursement methods that it had/is providing necessary services that had/have diagnostic or therapeutic use to Medicaid beneficiaries in violation of 42 U.S.C. §1320a-7a. See also 18 U.S.C. §1035; C.G.S §53a-290.

42.   By reason of the violation of 31 U.S.C. §31-3729(a)(1) defendants have knowingly or recklessly damaged the United States government and the States set forth above in an as yet undetermined amount.

### SECOND CAUSE OF ACTION (VIOLATION OF 31 U.S.C §3729(a)(2)

43.   On information and belief, Kool Smiles presented or caused to be filed with the United States government and the States set forth above claims with knowledge of their falsity or with grossly negligent or reckless disregard to facts and conditions that would indicate that the claims were inaccurate or inappropriate and false and caused payments for the claims to me made by the United States government.

44.   On information and belief, Kool Smiles have and continue to knowingly or with reckless disregard for facts, misrepresent through false certifications and improper use of Medicaid reimbursement methods that it had/is providing necessary services that had/have diagnostic or therapeutic use to Medicaid beneficiaries in violation of 42 U.S.C. §1320a-7a. See also 18 U.S.C. §1035; C.G.S §53a-290.

29

45.     By reason of the violation of 31 U.S.C. §31-3729(a)(2) defendants have knowingly or recklessly damaged the United States government and the States set forth above in an as yet undetermined amount.

### THIRD CAUSE OF ACTION (VIOLATION OF 31 U.S.C §3729(a)(3)

46.     Kool Smiles in performing the acts set forth above, conspired to defraud the United States government in violation of 31 U.S.C. §3729(a)(3) by having false or fraudulent claims allowed or paid to the damage of the United States' government and the States set forth above.

### FOURTH CAUSE OF ACTION CONNECTICUT STATE FALSE CLAIMS ACT CONN. GEN. STAT. §§ 17b- 301b(a)(1)-(2)

47.     Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

48.     To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Connecticut on behalf of the State of Connecticut as authorized by Conn. Gen. Stat. §§ 17b- 301b(a)(1)-(2).

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Connecticut, for each violation of Conn. Gen. Stat. §§ 17b- 301b(a)(1)-(2) et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

### FIFTH CAUSE OF ACTION VIRGINIA FRAUD AGAINST TAXPAYERS ACT VA. CODE §§ 8.01-216.3a(1)-(2)

49.     Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

50.     To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Virginia on behalf of the State of Virginia as authorized by Va. Code §§ 8.01-216.3a(1)-(2).

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State

of Virginia, for each violation of Va. Code §§ 8.01-216.3a(1)-(2) et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

### SIXTH COUNT DISTRICT OF COLUMBIA FALSE CLAIMS ACT
### D.C. CODE ANN. §§ 2-308.14(a)(1)- (2) et seq.

51.     Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

52.     To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the District of Columbia on behalf of the District as authorized by D.C. Code Ann. §§ 2-308.14(a)(1)-(2) et seq.

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the District of Columbia, for each violation of D.C. Code Ann. §§ 2-308.14(a)(1)- (2) et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite,

or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

### SEVENTH COUNT GEORGIA STATE FALSE MEDICAID CLAIMS ACT GA. CODE ANN. §§ 49-4-168.1(a)(1)-(2) et seq.

53.    Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

54.    To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Georgia on behalf of the State of Georgia as authorized by Ga. Code Ann. §§ 49-4-168.1(a)(1)-(2) et seq.

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Georgia, for each violation of Ga. Code Ann. §§ 49-4-168.1(a)(1)-(2) et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at

prevailing rates, for expenses, and for such other and further relief as this Court deems

meet, just and proper.

**EIGHTH COUNT NEW MEXICO MEDICAID FALSE CLAIMS ACT**
**N.M. STAT. ANN. §§ 27-14-4(A) & (C), and**
**NEW MEXICO FRAUD AGAINST TAXPAYERS ACT**
**N.M. STAT. ANN. §§ 44-9-3a(1)-(2) et seq.**

55.   Relator repleads, and incorporates by reference as if fully set forth

herein the facts pleaded in this complaint.

56.   To the extent that any of the allegations set forth above result in a

recovery of federally-expended funds on behalf of the United States, Relator makes a

claim for the recovery of that portion of the recovery representing the amount expended

by the State of New Mexico on behalf of the State of New Mexico as authorized by N.M.

Stat. Ann. §§ 27-14-4(A) & (C), and N.M. Stat. Ann. §§ 44-9-3a(1)-(2).

WHEREFORE, Relator prays for judgment against the defendants jointly and

severally in the amount of three times the overcharges submitted for payment to the State

of New Mexico, for each violation of N.M. Stat. Ann. §§ 27-14-4(A) & (C), and N.M. Stat.

Ann. §§ 44-9-3a(1)-(2), et seq., for the maximum amount allowed to the Qui Tam Plaintiff

under the above statutory cite, or any other applicable provision of law, for its court costs

34

and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

## NINTH COUNT LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW LA. REV. STAT. §§ 46:438.3(A)-(B)

57.     Relator restates, repleads, and incorporates by reference as if fully set forth herein the facts pleaded in Counts I through IV.

58.     To the extent that any of the allegations set forth in Counts I-IV above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Louisiana on behalf of the State of Louisiana as authorized by La. Rev. Stat. §§ 46:438.3(A)-(B).

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Louisiana, for each violation of La. Rev. Stat. §§ 46:438.3(A)-(B), et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

## TENTH COUNT INDIANA FALSE CLAIMS ACT IND. CODE § 5-11-5.5-2(b)(8)

59.    Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

60.    To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Indiana on behalf of the State of Indiana as authorized by Ind. Code § 5-11-5.5-2(b)(8)

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Indiana, for each violation of Ind. Code § 5-11-5.5-2(b)(8), et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

36

## ELEVENTH COUNT
## TEXAS MEDICAID FRAUD PREVENTION ACT

### TEX. HUM. RES. CODE §§ 36.002(1) & (4)(B)

61.     Relator restates, repleads, and incorporates by reference as if fully set forth herein the facts pleaded in Counts I through IV.

62.     To the extent that any of the allegations set forth in Counts I-IV above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Texas on behalf of the State of Texas as authorized by Tex. Hum. Res. Code §§ 36.002(1) & (4)(B), et seq.

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Texas, for each violation of Tex. Hum. Res. Code §§ 36.002(1) & (4)(B), et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

37

## TWELFTH COUNT
## OKLAHOMA FALSE CLAIMS ACT

### OKLA. STAT. TIT. 63, §§ 5053.1B(1)-(2)

63.     Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

64.     To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Oklahoma on behalf of the State of Oklahoma as authorized by Okla. Stat. Tit. 63, §§ 5053.1B(1)-(2).

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Oklahoma, for each violation of Okla. Stat. Tit. 63, §§ 5053.1B(1)-(2) et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

## THIRTEENTH
## MASSACHUSETTS FALSE CLAIMS LAW
## MASS. ANN. LAWS. CH. 12, §§ 5B(1)-(2)

65.    Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

66.    To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the Commonwealth of Massachusetts  on behalf of the Commonwealth of Massachusetts  as authorized by Mass. Ann. Laws. Ch. 12, §§ 5B(1)-(2).

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Massachusetts, for each violation of Mass. Ann. Laws. Ch. 12, §§ 5B(1)-(2).et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

## FOURTEENTH COUNT
## MARYLAND FALSE HEALTH CLAIMS ACT
## MD. CODE ANN., HEALTH-GENERAL §§ 2-602(a)(1)-(2)

67.    Relator repleads, and incorporates by reference as if fully set forth herein the facts pleaded in this complaint.

68.    To the extent that any of the allegations set forth above result in a recovery of federally-expended funds on behalf of the United States, Relator makes a claim for the recovery of that portion of the recovery representing the amount expended by the State of Maryland on behalf of the State of Maryland, as authorized by Md. Code Ann., Health-General §§ 2-602(a)(1)-(2).

WHEREFORE, Relator prays for judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the State of Maryland, for each violation of Md. Code Ann., Health-General §§ 2-602(a)(1)-(2) et seq., for the maximum amount allowed to the Qui Tam Plaintiff under the above statutory cite, or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Relator-Michael Greenwald, D.D.S. ex rel and Michael Greenwald D.D.S., individually claim that judgment be entered against the defendants each of them jointly and severally:

A.      In an amount, presently indeterminable for violations of 31-3729(a)(1)(2) and (3) sum duly trebled in addition to a fine not less than $5,000 per violation and not more than $10,000, together with attorney's fees and costs;

B.      In and amount, presently indeterminable for violations of all of the State False Claims Acts of the States cited above in Fourth through the Fourteenth Counts of this complaint.

C.      An award to plaintiff-realtor Michael Greenwald D.D.S. pursuant to 31 U.S.C. §3730(d)

D.      An award to plaintiff-realtor Michael Greenwald D.D.S. pursuant to the States' false claims acts set forth herein.

41

E.    In addition, plaintiffs claim for such further and additional relief at law or in

equity that this Court may deem appropriate or proper.

THE PLAINTIFF
UNITED STATES OF AMERICA
EX REL MICHAEL M. GREENWALD D.D.S.

BY  _James P. Brennan_

JAMES P. BRENNAN
Fed. Bar #ct00572
BRENNAN LAW FIRM, LLC
207 Bank Street
P.O. Box 1071
Waterbury, CT 06721-1071

## CERTIFICATION OF SERVICE

This is to certify that a true and correct copy of the Motion for Amended Complaint and Amended Complaint was served first class mail, this 23rd day of November, 2015.

Richard Molot, Esq.
Assistant United States Attorney
United State's Attorney's Office
Connecticut Financial Center
157 Church Street (Floor 23)
New Haven, CT 06510

**Pursuant to 31 U.S.C. § 3730(b)(2), no service was made upon the defendants since this case is still under seal.**

_James P. Brennan_

James P. Brennan
Commissioner of the Superior Court

Complaint Second Amended Complaint final.wpd

42